## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CLARKE D. PATTERSON,**

      **Petitioner,**

**v.**                                                    **Civil Action No. 1:19cv135**
                                                         **(Judge Kleeh)**

**RUSSELL MASTON, Superintendent**
**of St. Marys Correctional Center,**

      **Respondent.**

### REPORT AND RECOMMENDATION

On July 10, 2019, the *pro se* petitioner, an inmate then-incarcerated at Huttonsville

Correctional Center ("HCC") in Huttonsville, West Virginia, filed an Application for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Pursuant to a Notice of Deficient

Pleading, on August 7, 2019, Petitioner refiled his petition on a Court-approved form, and filed a

motion to proceed *in forma pauperis* ("IFP"); a copy of his Prisoner Trust Account Report with its

Ledger Sheets; and separate motions for protection, for appointed counsel, and for an extension of

time.[1] ECF Nos. 5, 6, 7, 8, 9, 10. By Order entered August 20, 2019, Petitioner was directed to

refile signed copies of his motions. ECF No. 11. On September 11, 2019, by separate Orders,

Petitioner  was  granted permission to proceed IFP but directed to pay the $5.00 filing fee; his

motion for appointed counsel was denied; his motion for an extension of time was denied as moot;

and his motion for protection was denied, in part with prejudice and in part without. ECF Nos. 14,

---

[1] Inexplicably, despite having already filed the instant § 2254 action, nearly a year later, on August 3, 2020, Petitioner filed another pleading that was docketed as a § 2254 action. Because it was not on a Court-approved form, the Clerk issued a Notice of Deficient Pleading, advising petitioner that he was required to refile on a Court-approved form and pay the fee or file a motion to proceed as a pauper. The notification and Court-approved forms were sent to him via certified mail, return receipt requested, and service was accepted on August 7, 2020. Petitioner never responded or corrected the deficiencies.  By Order entered September 10, 2020, the case was dismissed for failure to prosecute. See Case No. 5:20cv156.

15, 16, 17. On October 15, 2019, Petitioner filed a motion to appeal the Order denying appointed counsel to the District Judge and paid the requisite filing fee.  ECF Nos. 19, 20.

On February 20, 2020, the Respondent was directed to answer the petition. ECF No. 21. On February 24, 2020, Petitioner filed a motion to amend, seeking to correct the name of the Respondent. ECF No. 22.  By Order entered February 25, 2020, the motion to amend was construed as a motion to substitute Respondent and granted. ECF No. 26. On March 20, 2020, Petitioner filed a Notice of Change of Address, indicating his transfer to St. Marys Correctional Center ("SMCC"). ECF No. 29. Petitioner also moved to substitute the Superintendent of SMCC as the Respondent [ECF No. 30] and filed a "Statements, Statute, and Supporting Facts" regarding his petition, which appeared to raise new claims. ECF No. 31.  The same day, Respondent filed a Motion to Dismiss and for Summary Judgment, attaching numerous state court records, and an accompanying memorandum of law. ECF Nos. 32, 33. Because Petitioner's intentions regarding the "Statement, Statutes, and Supporting Facts" were unclear, by separate Orders entered March 24, 2020,  Petitioner was directed to clarify his intentions; advised that if he wished to amend his petition he must advise the Court and file an amended petition within 14 days; the Clerk was directed to send him another Court-approved form § 2254 petition [ECF No. 34]; and Petitioner's motion to substitute was granted. ECF No. 35. In response, on April 2, 2020, Petitioner filed a motion to "reset time lines [sic]." ECF No. 37.

On August 27, 2020, Petitioner filed a petition for "Writ of Mandamus," attaching a copy of a post-conviction habeas corpus form and the ledger sheets to his Prisoner Trust Account.  ECF No. 43. Petitioner also filed another motion to appoint counsel and a motion to file only one copy. ECF Nos. 39, 40. By Order entered November 12, 2020, Petitioner's Motion to Appeal to the District Judge the Order denying his (first) Motion for Appointed Counsel was denied. ECF No. 41.

# I. Factual and Procedural Background

## A. Petitioner's Conviction and Sentence[2]

Petitioner and his two children were living in a homeless shelter when D.H.'s family invited them to stay in their home. D.H., the alleged victim, was then thirteen years old. Petitioner allegedly tricked D.H. into looking at pictures of his genitals on his cellphone and caressed her inner thigh while asking how it made her feel. He also allegedly entered her bedroom, placed his hands on her hips, and ground against her from behind in a sexual manner.  D.H. told her mother, who advised that afterwards, when confronted about his actions, Petitioner admitted the behavior but claimed it was part of a joke. D.H.'s family evicted Petitioner from their home and contacted law enforcement.

On March 18, 2014, Petitioner was indicted and charged in Clay County Circuit Court[3] Case No. 14-F-12 with one count of "Use of Obscene Matter with Intent to Seduce Minor" in violation of W.Va. Code § 61-8A-4, and one count of "Sexual Abuse by a Parent, Guardian or Person in a Position of Trust," in violation of W.Va. Code § 61-8D-5. See Docket Sheet, ECF No. 32-1; Indictment, ECF No. 32-2. Upon the state's motion, the court permitted the state to admit as *res gestae* evidence Petitioner's acts involving similar conduct toward the victim that occurred in Burnsville, West Virginia, noting that Petitioner had also been charged in Calhoun and Braxton Counties. See Motion to Admit Evidence, ECF No. 32-3 at 1; see also Order (granting same), ECF No. 32-4.

---

[2] The information in this section is taken from the West Virginia Supreme Court of Appeals' ("WVSCA") memorandum decision on appeal. See ECF No. 32-13.

[3] There are typographical errors in the record regarding the court in which Petitioner was convicted. The decision of the WVSCA incorrectly references the appeal as one from an order from Hancock County (although above on the same page, it notes the correct court) [ECF No. 32-13 at 1]; and  the Respondent's memorandum in support of its dispositive motion references Petitioner having been indicted in Boone County. ECF No. 33 at 2.

On July 23, 2014, after a one-day jury trial,[4] Petitioner was convicted in Clay County

Circuit Court on both counts. See Verdict Form, ECF No. 32-6. At a December 15, 2014 hearing,

Petitioner's motions for a new trial and for a judgment of acquittal were denied and he was

sentenced to a term of not less than one nor more than five years for "Use of Obscene Matter with

Intent to Seduce a Minor," and to not less than ten nor more than twenty years for "Sexual Abuse

by  a Parent, Guardian, Custodian or Person in Position of Trust," with the sentences to run

concurrently. See Sentencing Transcript, ECF No. 32-7 at 13; see also Sentencing and

Commitment Order,[5] ECF No. 32-8; Amended Sentencing and Commitment Order,[6] ECF No. 32-

9.  He was also required to register as a lifetime sexual offender, and to submit to 25 years of

supervised probation upon release.[7]  See Sentencing Transcript, ECF No. 32-7 at 14.

## B. **Direct Appeal**

On February 9, 2015, through counsel,[8] Petitioner filed a notice of appeal of the circuit

court's February 18, 2015 Amended Sentencing and Commitment Order in the WVSCA. ECF No.

32-10. On appeal in WVSCA Case No. 15-0110, Patterson raised four grounds:

> 1)  Petitioner's Sentencing and Commitment Order is not an accurate representation of the
> Petitioner's sentencing hearing. The Order inaccurately lists the Petitioner as being
> convicted pursuant to a plea agreement and inaccurately provides that the sentences are to
> run consecutively, as opposed to concurrently. The Petitioner has contemporaneously filed

---

[4] Trial counsel was Jerome Novobilski.

[5] This Order erroneously stated that Petitioner's conviction was by way of a plea, and that his sentences were to run consecutive. See ECF No. 32-8 at 1 - 2.

[6] The Amended Sentencing and Commitment Order corrected the errors regarding the conviction at jury trial (not by way of plea) and concurrent sentences. See ECF No. 32-9 at 1 - 2.

[7] The transcript of the sentencing hearing reveals that Petitioner entered a plea to "attempt to commit a felony" in Calhoun County and received a one to three-year sentence there, and the charges in Braxton County were dismissed. See Sentencing Transcript, ECF No. 32-7 at 8 – 9.

[8] Attorneys Kevin W. Hughart and Christine M. Justice were appointed as appellate counsel. See ECF No. 32-10 at 1; see also ECF No. 32-11 at 1.

a motion to correct the sentencing order in the Circuit Court of Clay County, but wishes to preserve this point of error on appeal.[9] ECF No. 32-10 at 6.

2) Petitioner asserts that he received ineffective assistance of trial counsel, because counsel failed to call any witnesses on his behalf and failed to object to improperly admitted hearsay and Rule 404(B) evidence, prejudicing him by reversible error and depriving him of a fair trial. ECF No. 32-11 at 6.

3) Petitioner asserts that the trial court improperly admitted 404(b) evidence, by permitting as *res gestae* evidence, similar acts and statements of Petitioner toward the child victim in that occurred in other counties. Id. at 11.

4) Petitioner asserts that the trial court improperly admitted  Rule 403(B) hearsay evidence of the child victim's mother. Id. at 16.

By memorandum decision issued on April 8, 2016, the WVSCA affirmed the Circuit Court of Clay County. ECF No. 32-13. Mandate issued on May 9, 2016. See Exh. 1, WVSCA Docket – Direct Appeal.

## C. State Habeas Corpus Petition

On May 13, 2016, Petitioner filed a *pro se* petition[10] for habeas corpus relief, in the Circuit Court of Clay County, West Virginia, along with a motion to appoint counsel.[11] See Docket, Clay County Circuit Court Case No. 08-16-P-7, ECF No. 32-14; see also Petition for Writ of Habeas Corpus, ECF No. 32-15. That petition, filed without a memorandum in support, but with copies of statutes attached, raises nineteen grounds:

1) Counsel was ineffective for:

---

[9] By the time Petitioner perfected his appeal by filing his appellate brief, the errors in the Sentencing and Commitment Order were corrected; Ground One was not included, only the three subsequent grounds.

[10] Although Petitioner signed the petition *pro se*, it appears to have been prepared by counsel. See ECF No. 32-15.

[11] Counsel was appointed and replaced multiple times during the pendency of Petitioner's state habeas action; however, it does not appear that any amended petition was ever filed, although, inexplicably, the docket shows the entry of an October 19, 2016 Order directing Petitioner to file an amended petition by September 26, 2016, a logical impossibility.
    Petitioner was represented during his state habeas proceedings first by Kevin Hughart, then Paul Williams, then Timothy Gentilozzi, and then finally, by Andrew Chattin. See State Habeas Docket, ECF No. 32-14.

a) failing to advocate client's interest by repeatedly failing to object to multiple trial errors, and part of those failures to object resulted in the trial court interjecting multiple times to cure defects (as raised on appeal)

b) failing to investigate and raise a Fourth Amendment "search and Seizure violation" involving the illegal taking of Petitioner's phone and its contents, after being advised to do so;

c) failing to move to have prospective jurors Clevenger and Cruickshanks removed for cause (both were related to the Chief of Police and county probation officer).

d) failing to object to the trial court's abuse of discretion by failing to use and apply the required balancing tests outlined in WVRE 401, 402, and 403, impermissibly permitting prejudicial *res gestae* evidence to be entered into evidence.

e) failing to question the state's first and third/final witnesses; failed to question the state's second witness beyond one question, thus failing to advocate for client's interests.

f) failing to call DHHR worker Loretta Smith (aka Stone) when the state failed to call her as a witness, because she held critical evidence regarding the questioning of the state's main witness, D.H.

g) failing to hire experts in child psychology to show the probability of children lying to get rid of unwanted persons in their life.

h) failing to object to the state's eliciting testimonial evidence from Trooper David D. Moore involving "joint" questioning and answers of missing witness identified by the state as Loretta Smith, DHHR worker, a Confrontation Clause violation.

i) failing to object to numerous incomplete, improper, and missing jury instructions;

j) failing to offer any defense instructions, including a missing witness instruction;

k) failing to recognize and raise objections to multiple sentencing infirmities; and

l) generally, failing to demonstrate professional legal competence in violation of West Virginia Constitution, Article III, §§ 10 and 14, and the Sixth and Fourteenth Amendments of the United States Constitution, mandating an evidentiary hearing, reversal of convictions, vacation of sentences, and a new trial. ECF No. 32-15 at 4 - 6.

2) Appellate counsel, Kevin Hughart and Christine M. Justice were ineffective for:

a) raising an ineffective assistance of counsel claim on appeal with an insufficient record, causing the WVSCA to refuse to rule on its merits, because it was prematurely presented;

b) failing to challenge the procedural methods the circuit court failed to employ as required by WVRE 401, 402, and 403, permitting impermissible *res gestae* evidence in, circumventing WVRE 404(b) challenges;

c) failing to obtain the entire record of transcripts prior to filing the appeal, in derogation of West Virginia Constitution, Article III, §§ 10 and 14, and the Sixth and Fourteenth Amendments to the United States Constitution, thus mandating a new appeal or release. Id. at 6.

3) Petitioner's Fourth Amendment rights against illegal search and seizure were violated by the taking of his cell phone and the use of the pictures from that phone without a valid search warrant, and thereafter used as evidence to obtain an illegal indictment, constituting plain error, in derogation of West Virginia Constitution, Article III, §§ 4 and 10, and the Fourth and Fourteenth Amendments of the United States Constitution, mandating reversal of his convictions, vacation of sentences, and a new trial. Id. at 6 – 7.

4)  Prosecution abused its discretion, because Count Two of the Indictment lacked the requisite language "as alleged in Count I," which therefore appears to be a second charge for a second event, when there was only one incident charged, thus violating Double Jeopardy, as embodied in the West Virginia Constitution, Article III, 5 and 10, and the Fifth and Fourteenth Amendments of the United States Constitution, mandating reversal. Id. at 7.

5) The trial court abused its discretion when it repeatedly interjected and gave curative instructions to trial error when no objections were before the court, and each interjection appeared to be couched in favor of the prosecution, permitting it to let in evidence which otherwise should have been suppressed as evidence of an improper nature, denying Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, §§ 10 and 17, and the First, Fifth, and Fourteenth Amendments to the United States Constitution, denying Petitioner a fair trial, and mandating reversal of convictions and vacation of sentences. Id. at 7 - 8.

6) The prosecution and/or the  trial court abused its discretion for failure to ensure that all *voir dire* questions and answers were recorded to be transcribed for an adequate and complete record, denying Petitioner due process, equal protection, and the right to appeal, violating West Virginia Constitution, Article III, §§ 10, 14, and 17, and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, resulting in the denial of a fair trial and right to appeal. Id. at 8.

7) The trial court and/or prosecution abused their discretion by permitting relatives of the police department and probation office onto the jury, denying Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, §§ 10 and 17, and the First, Fifth, and Fourteenth Amendments to the United States Constitution, resulting in the denial

of a fair trail with a neutral, non-biased jury, mandating reversal of convictions and vacation of sentences. Id. at 8 – 9.

8) The trial court abused its discretion by permitting Trooper David C. Moore to give testimony about how he and the DHHR worker, Loretta Smith questioned the alleged victim D.H. for the initial interview, where Ms. Smith did not testify, after being identified on the state's witness list, in direct violation of the Confrontation Clause, denying Petitioner due process, equal protection of the law, and the right to confront witnesses, and denied the authentication process to see if either had credentials to do this type of interview of a child witness, in violation of the West Virginia Constitution, Article III, §§ 10 and 14, and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, resulting in the denial of a fair trial. Id. at 9.

9) The trial court abused its discretion when it failed to give any instruction or legal definition as to the charge of "ATTEMPT" or "ATTEMPT TO COMMIT" which denied Petitioner due process and equal protection of law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions and vacating of sentences with the award of a new trial. Id. at 9 – 10.

10) The trial court abused its discretion when it failed to give any instruction or legal definition as to the charge for "OBSCENE MATTER," which denied Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. at 10.

11) The trial court abused its discretion by failing to give adequate and proper instructions or legal definitions as to the charge given for "SEXUAL CONTACT," which denied Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. at 10 – 11.

12) The trial court abused its discretion when it failed to give adequate and proper instructions or legal definitions for the charge as raised for "SEXUAL INTERCOURSE" which denied Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. at 11.

13) The trial court abused its discretion when it failed to give complete and accurate instructions or legal definitions as to the charge as raised for "SEXUAL ABUSE BY A PARENT, GUARDIAN, CUSTODIAN OR PERSON IN A POSITION OF TRUST," denying Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the

denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. at 11 – 12.

14) The trial court abused its discretion by failing to give adequate and complete legal instruction or legal definition, omitting specific definitions as raised for "SEXUAL EXPLOITATION," denying Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. at 12.

15) The trial court abused its discretion when it failed to give all of the required elements of Sexual Abuse by a Parent, Guardian, Custodian or Person in a Position of Trust when giving the elemental requirements for a verdict, as required by law, which impermissibly reduced the state's burden of proof, denying Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. at 13.

16) The trial court abused its discretion when it failed to properly identify the Petitioner as the person on trial by his given name in the indictment and at trial, when giving elemental instructions required for conviction, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. 13 – 14.

17) The trial court abused its discretion when it failed to give any adequate and proper instruction or legal definition as charged for "INTENT," denying Petitioner due process and equal protection of the law, in violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, resulting in the denial of a fair trial, mandating reversal of convictions, vacation of sentences, and the award of a new trial. Id. at 14.

18) The trial court abused its discretion when it gave Petitioner extended supervision for a period of years after the completion of his sentence, where the statutes are in conflict, giving Petitioner the right to choose the lesser, or the statute that does not permit post-trial supervision, denying Petitioner due process and equal protection of the law, in direct violation of West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, constituting cruel and unusual punishment, in derogation of Amendment 5 of the West Virginia Constitution, Article III, § 10, and the Eighth [sic][12] and Fourteenth Amendments to the United States Constitution, mandating remand for re-sentencing without the post-trial supervision. Id. at 14 – 19.

19) The trial court abused its discretion when it impermissibly sentenced Petitioner to one to five years for the charge of "Use of Obscene Matter with the Intent to Seduce a Minor" in violation of W.Va. Code § 61-8A-4, where the statute authorizes only a determinate sentence of

---

[12] This number appeared to have been a "7" that was overtyped as "8." See ECF No. 32-15 at 14.

"up to five years," in derogation and denial of Petitioner's due process and equal protection rights as mandated in the West Virginia Constitution, Article III, § 10, and the Fifth and Fourteenth Amendments to the United States Constitution, mandating re-sentencing or release. Id. at 15.

At a status hearing on October 17, 2016, Petitioner appeared with counsel, Andrew Chattin, and counsel informed the court that he and Petitioner were in agreement to waive an evidentiary hearing; the State did not object. See Final Opinion and Order, ECF No. 32-17 at 1.

On March 14, 2017, the Clay County Circuit Court issued its final opinion and Order on Petitioner's habeas corpus petition, denying it and dismissing it without a hearing.  ECF No. 32-17 at 1.

On April 7, 2017, through counsel,[13] Petitioner filed a notice of appeal to the WVSCA. ECF No. 32-18.  On appeal in Case No. 17-0336, Petitioner raised these grounds, arguing that the circuit court erred when it:

1) denied Petitioner post-conviction habeas corpus relief based upon a Fourth Amendment violation of search and seizure (of cell phone images) [ECF No. 32-19 at 4, 6 – 7];

2) denied Petitioner post-conviction habeas corpus relief based upon the ground of Double Jeopardy [id. at 4, 7 – 9]; and when it

3) denied Petitioner post-conviction habeas corpus relief based upon six[14] prejudicial statements made by the trial court to the jury which denied Petitioner his due process and equal protection rights. Id. at 4, 9 -10.

On February 12, 2018, Respondent filed a summary response, recommending that the circuit court's judgment denying habeas relief should be affirmed. ECF No. 32-20.

---

[13] Andrew Chattin was habeas appellate counsel; he was later replaced by Jeffrey A. Davis.

[14] Those six instances all related to curative instruction the trial court gave to the jury after testimony from witnesses regarding statements made by third parties, explaining that the jury could not consider the testimony for the truth of the matter asserted, but rather, to explain the witnesses' actions.  See WVSCA Memorandum Decision, ECF No. 32-21 at 3.

On November 21, 2018, the WVSCA issued an unpublished memorandum decision affirming the circuit court's order denying habeas relief. <u>See</u> ECF No. 32-21.  Mandate issued on December 27, 2018. <u>See</u> Exh. 2, WVSCA Docket – Habeas Appeal.

**D. <u>West Virginia Criminal Procedure Rule 35(b) Motion for Sentence Reduction</u>**

On February 20, 2019, Petitioner filed a motion pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure for a sentence reduction. <u>See</u> ECF No. 32-22. On February 27, 2019, the motion was denied for lack of jurisdiction as untimely filed.[15] ECF No. 32-23.  Petitioner did not appeal.

**E. <u>Federal Habeas Petition</u>**

**1) <u>The Petition</u>**

In his August 7, 2019 Court-approved form § 2254 petition, Patterson raises the following grounds for relief:

1) "Ineffective assistance of trial counsel, Direct Appeal, Habeas corpus, Habeas corpus appeal, and Rule 35(b) had no counsel court dismiss action not timely file whitch ever counsel was supposed to file [ECF No. 5 at 6]" (all grammatical and spelling errors in original);

2) "unconstrition search and seizure, fruit of forbidding tree, fruit of a posionous tree, Due processed, Equal protection, Syllabus point, Equal Right Act, Ambiguous penal statutes, test of harmless error, Double Jeopardy, Criminal Rule Preceeded, Courtroom Preceeded, and Prejudice [<u>id.</u> at 9]" (all grammatical and spelling errors in original);

3) "Judge violated Double Joepardy in sentencing on Dec. 15, 2014 when he stated zero day served on end of sentencing order. And when the [] Judge stated that the defendant faile to take responsable for his Action show projudical to case [<u>id.</u> at 11]" (all grammatical and spelling errors in original);

4) "I file with the Governor office for a clemency[.]" <u>Id.</u> at 13 (all spelling and grammatical errors in the original).

---

[15] In the Order, the Court noted that "[e]ven if this motion was timely filed and this court had jurisdiction to consider the same, this Court has previously denied the defendant's motion to reconsider its sentence and this court is of the opinion that the sentence imposed herein is in the proper administration of justice.    <u>See</u> ECF No. 32-23 at 1 – 2. A careful review of the criminal docket does not reflect any previous motions for sentence reductions; it is unclear if this is merely another typographical error.

Attached to his petition, Patterson included a document that appears to be partly a table of contents from a filing in another court, with two additional pages, one describing his sentence and the other, detailing certain errors that the circuit court made [ECF No. 5-1 at 1 - 4]; a copy of the WVSCA's April 8, 2016 Memorandum Decision on his direct appeal of his sentencing order, WVSCA Case No. 15-0110 [id. at 5 – 9]; a copy of the Mandate from the WVSCA on what appears to be another unrelated case (In re. L.S. and S.C., WVSCA Case No. 18-0707) [id. at 10]; what appears to be a partial memorandum in support of his § 2254 petition, titled "Argument, Failure of Habeas Appeal [id. at 11 – 12]; a copy of a February 27, 2019 Order Denying Reduction of Sentence from the Circuit Court of Clay County [id. at 13 – 15]; a copy of a January 12, 2015 Sentencing and Commitment Order from the Circuit Court of Clay County [id. at 16 – 18]; a copy of a January 29, 2019 letter to Petitioner from the West Virginia State Parole Board denying his application for Executive Clemency [id. at 19]; a copy of a November 21, 2018 Memorandum Decision from the WVSCA affirming the circuit court's March 14, 2017 order denying Petitioner's petition for writ of habeas corpus. Id. at 20 – 24.

On Question 18 of the Court-approved form, inquiring as to whether the federal petition is timely filed, Patterson states:

> Petitioner wanted to make sure all his state remedies and exhaust all the Petitioner Remedies. I not very good at spelling, writting, reading, and understanding legal work. I have no time to go to the law library to see if they have book I need. It has took me four and one-Half years to learn what I have now in legal work and thing the state has done to me. Could I get counsel who will help me with my time line and keep me understanding.

Id. at 19 (all spelling and grammatical errors in original).

As relief, Petitioner requests that this Court

> charges against all state worker who violated Petitioner Right to convicted him of Illegal charges base on Illegal Search and Seizure evidence; and content thereof.

Reversal of criminal conviction, Dismiss with perjudice on all Illegal evidence obtain thereof, Pain and Suffering of charges convicted of, weight goin, Any fee own to the Honorable Courts for legal work, motion for Evidence, and pain and suffering.

Id. at 20 (all spelling and grammatical errors in original).

### 2) **Respondent's Motion to Dismiss and for Summary Judgment**

Respondent contends that Patterson's particular grounds for relief "are not easily discernible on the face of the petition [ECF No. 33 at 8]," but that it appears that Patterson's claims are 1) counsel was ineffective; 2) his Fourth Amendment rights were violated; and 3) his convictions and sentences for two separate felony offenses violate Double Jeopardy. Respondent argues that even liberally construed, Patterson's claims fail because

1) while Patterson did raise an ineffective assistance of counsel ("IAC") claim on direct appeal to the WVSCA, the WVSCA appropriately rejected the claim because such claims must be raised in habeas. Patterson did subsequently raise several IAC claims in his habeas petition in circuit court, he never appealed those to the WVSCA, therefore, they are unexhausted. Further, AEDPA's one-year limitation period, 28 U.S.C. § 2254(d)(1) has run since Patterson filed his federal petition,[16] so this Court should "either dismiss the [IAC] claims as unexhausted in the absence of good cause, or stay the matter" to permit Patterson to finish exhausting those claims. ECF No. 33 at 9 – 10.

2) Petitioner's claims of Fourth Amendment violations are not cognizable in this proceeding and should be dismissed. Id. at 11.

3) Patterson's claim that the Double Jeopardy clause of the Fifth Amendment was violated when he was tried and convicted of two charges stemming from the same event fails as a matter of law. Id. at 11 – 14.

Accordingly, Respondent requests that Grounds One and Two be dismissed and that this Court grant summary Judgment on Ground Three. Id. at 14.

---

[16] Respondent's memorandum in support of its dispositive motion contains a number of factual or typographical errors, averring that Petitioner's February 20, 2019 Rule 35(b) Motion for Sentence Reduction was denied by Order entered December 27, 2019. ECF No. 33 at 4. The Order denying the motion for sentence reduction was entered on February 27, 2019, not December 27, 2019. Respondent also contends that the instant § 2254 petition was filed on January 17, 2019 [id.]; it was filed on July 10, 2019. Finally, Respondent's March 20, 2020 response incorrectly contends that "AEDPA's one-year limitation period . . . has run since the filing of the instant Section 2254 petition." Id. at 10. However, Petitioner's one-year period of limitation had not yet expired at the time Respondent's dispositive motion was filed.

Attached to its memorandum in support of its dispositive motion, Respondent provides the Court with the documents for Petitioner's underlying criminal case, direct appeal, state habeas, and the appeal of the same, his Rule 35(b) motion for sentence reduction, and copies of the dockets for his underlying criminal case and his state habeas.[17] See ECF Nos. 32-1 through 32-23.

### 3) <u>Petitioner's Statements, Statute, and Supporting Facts</u>

On March 20, 2020, the same day that the Respondent filed its dispositive motion, without explanation or leave of Court, Petitioner filed a document titled "Statements, Statute, and Supporting Facts" raising six claims, most of which had not been previously raised:

**<u>Ground One</u>:** The test for harmless error, (a) inadmissible evidence must be remove to see if there enough evidence to still convict. First: an arrest cannot be justified what its reproduces, nor can a illegal search be justified what it produces. Without illegal obtain evidence and content thereof, the charges the petitioner's now stand convicted are without merits. The statements, Interviews, Investigations, reports, recordings, testimonies, and records are all base on illegal obtain evidence, and base on hate crime; the Government allow these violations to stand[.]
<u>Supporting:</u>
1) State v. Moore, 165 W.Va. 837, 272 S.E.2d 804, 1980 W.Va. LEXIS 600 (W.Va. 1980)
2) State v. Patterson, July 23, 2014 Transcripts; testimonies, Interview on Illegal obtain evidence, Syllabus Point saying cannot use, and Constitutional Right saying cannot be obtain.
3) State v. Davis supra.
4) Criminal preceded rules, and Codes
5) Fourth and Fourteenth Amendments of the United States Constitutions []
6) West Virginia Constitution Article III §§ 6, 10, 11)
7) Syllabus Points one State v. Davis.  ECF No. 31 at 2 – 3 (all spelling and grammatical errors in original).

**<u>Ground Two</u>:** Charges violated the Constitutions, both the United States and West Virginia on Equal Protection, Projudical, Due Process, Double Joepardy, and Legislater or Congress was inflences by Bill of Authority, Authoritorion Charges, Inflences of Magion Law Bills, Laws maker, Rules Makers and charges provided; violated their Own Oath of Office when they violated the Constitutional Rights provided.
<u>Supported:</u>
1) W.Va. Const. Art. III § 11 stated: . . . No person shall be derived by law of any right, privilege, or because of any act done . . .
2) U.S. Const. 4th and 14th Amend.
3) W.Va. Const. Art. III, [§§] 6, 10, and 11 stated:  . . . No person shall be twice in jeopardy of life, liberty, or property (this is violated in charges and sentencing). Without Due Process of law or deny to any person within its jurisdiction to Equal Protection of Law.

---

[17] Copies of the dockets for Petitioner's direct appeal and the appeal of his habeas were not included.

4) W.VA. Const. Art. VI § 16: "Oath of Office" Any state worker taking any government Office or Seat has to sware a Oath to uphold the Constitutional laws, or give up their seat or office; If they violated them. ECF No. 31 at 3 – 4 (all spelling and grammatical errors in original).

**Ground Three**: Fruit of the Poisonous tree[.] Where a confession is induce by illegally seized evidence, the confession is subject to exclusion of Fruit of the Poisonous tree. But if you have a sex charge this is violated, because of Influence of Hate Crimes. Moreover, according to this any testimonies, statements, interviews and records. All of these are fruit of the Poisonous tree and is subject to exclusion . . . But because the petitioner has been Charge and Convicted with a Hate Crime; this do not apply to his charges, this is in violation of Due process, Equal protection, and Projudical.

**Supporting:**
1) Testimonies of State Trooper David Moore on such evidence and written statements.
2) D.H. testimonies on Fruit of a poisonous tree and the violation thereof.
3) Tayna Harrison testimony on Illegally obtain evidence.
4) Charges base on constitutional violation, syllabus point, and state violations.
5) Criminal preceded violation
6) State v. Davis, syllabus point, 170 W.Va. 294 SE 2d 199 (1982)
7) U.S. Const. 4th and 14th
8) W.VA. Const. 6 and 10
9) Bills of Autority
10) Authoritorian Government Charges: 61-8A through 61-80, being restrained by the power of Other Social institutions.
11) Sentenced violation of Double Joepardy, Projudical, and Due Process of Constitutional Laws. ECF No. 31 at 4 – 5 (all spelling and grammatical errors in original).

**Ground Four**: Arrest to Shame for further investigation: The use of the arrest power to sham and provide paper trial and Illegal evidence for further investigations.

**Supporting:**
1) Investigation on Illegal evidence and report thereof.
2) Any statements written after arrest on Nov. 15, 2013, and charges thereof.
3) Any evidence obtain by reason of a unlawful search or arrest cannot be used in evidence against such persons[.]
3A) State v. Thomas, 157 W.Va. 640, 200 S.E. 2d 415 1974 W.Va. LEXIS 208 W.Va. (1974)[.] ECF No. 31 at 5 (all spelling and grammatical errors in original).

**Ground Five:** The General rule is that where there is an illegal search and seizured of property, such property cannot be interduce into evidence at trial and testimonies may not be given in regurd to surrounding of such property.

The Exception to this rulling is if you have a HATE CRIMES this does not apply to defendant cases.

**Supporting**:
1) State v. Massie 95 W.Va. 233, 120 S.E. 514, 1923 W.Va. LEXIS 238 W.Va. (1923).
2) The court indicuted that where there was a violation would support a reversal of conviction and compel a new trial . . .

Because of the Hate crime against petitioner's has been convicted on this Does not apply to his case.

A) Silverhorne Lumber Co. v. United States supra

B) State v. Davis supra

C) Patterson habeas and habeas appeal. ECF No. 5 – 6 (all spelling and grammatical errors in original).

**Ground Six:** Equal Right Act breathes life into the first, third, tenth, Eleventh, Seventeenth, and twenties of the W.Va. Const. Art. III, § [sic]

**Supporting**:

1) Allen v. State Human Right Comm'n, 174 W.Va. 139, 324 S.E. 2d 99, 1984 LEXIS 481 (W.Va. 1984)

2) W.Va. Const. Art. III, §§ First

3) W.Va. Const. Art. III, §§ third

4) W.Va. Const. Art. III, §§ tenth

5) W.Va. Const. Art. III, §§ Seventeenth

6) W.Va. Const. Art. III, §§ Twentieth

7) W.Va. Const. Art. III, §§ Eleven stated:

No person within its jurisdiction be depride of any law, any right or privilege because of any act done . . .

8) Equal Right Act.

9) All Patterson cases within circuit court and supreme. ECF No. 31 at 6 (all spelling and grammatical errors in original).

As relief, Petitioner requested:

Apply any and All ex-post facto laws to petitioner cases, remove all inmissible evidence then see if there is stell enough to convict. The charges are without merit; without the inmissible evidence of Illegal Search and seizure constitutional violation, Confession obtain on such evidence, testimonies on constitutional violation evidence and content thereof, the Petitioner Conviction is in fact a condictional Hate Crime and the Lower Courts kept repeatedly violated his constitutional Rights, Syllabus points, Rules of Criminal preceded, Statutes, Codes, and There own OATH OF OFFICES . . . [and]  Reversal the Illegal Conviction against him, Dismiss with Projudical; all charges base on such evidence, exspunged the N.C.I.C. from Illegal charges, and Pay him for his pain and suffering for: his kids, the way he been treated, the medical, the foods he been made to eat, deny him from being with his mom and Dad when they pass, or denying him to go to his dad full Meteraly Honor furnel. Moreover the Hate crime he had to live through in the Prison system when he got out.

Id. at 7.

## 4) Order Directing Petitioner to Clarify Claims

Because Patterson's intentions regarding his Petitioner's Statements, Statute, and Supporting Facts were unclear, on March 24, 2020, he was directed to notify the Court within fourteen days if he wished to amend his petition to add the additional claims, and advised that if so, he must file a motion to amend, and refile all the claims together in an amended petition that would supersede any previous petition. ECF No. 34. In response, on April 2, 2020, Petitioner filed a motion to "reset time lines [sic]." ECF No. 37. In it, Petitioner, by then having received his copy of the Respondent's dispositive motion, noted the Respondent's contention that he had not exhausted all of his claims before filing his § 2254 petition and that "the time to be able to file has past [sic][id. at 1]," stating in pertinent part:

> . . . The Petitioner is not a lawyer and does not know about all of these timeline. But if the [] Court will allow him to refile the habeas in the Clay County Circuit Court. This will provide the Honorable Judge Alsop to undo or Answer the violation within his courtroom proceeded.
>
> The petitioner wanted to point out the Habeas Appeal, No. 17-0336 was profected by counsel Jeffery Davis and not by the petitioner's. The three ground listed was the ground petitioner counsel raised.
>
> The petitioner would like to be sure all of the ground in the lower courts has been exhausted as Assistant Attorney General Mary B. Niday. The petitioner noted that she stated he has not file in the lower court and his time has past to file in the lower court(s).
>
> If the . . . Court will provide the petitioner with a timeline to go to the lower court(s) to allow all paperwork the chance to be shown at the lower courts.

ECF No. 37 at 1 – 2 (all spelling and grammatical errors in original).

Petitioner's motion is construed as a motion to stay the case.

## II. <u>Standard of Review</u>

### A. <u>Review of Petitions for Relief</u>

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, the undersigned is authorized to review such petitions for relief and submit findings and

recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

### B. **Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary  will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt

as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id.

"Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quotations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253,

289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## C. Petitions for Habeas Corpus Under 28 U.S.C. § 2254

Title 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standards set forth in § 2254(d), which provides that the habeas petition of a person in State custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim--
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). Moreover, the factual determinations by the state courts are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, when reviewing a petition for habeas relief, the Federal Court uses a "highly deferential lens" mandated by the AEDPA. DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of

a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application clauses of § 2254)(1)(d) have separate and independent meanings. Williams v. Taylor, 529 U.S. 362, 364 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 US at 405) (internal quotations omitted). A writ of habeas corpus may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." Id. at 300-01 (internal marks omitted).

Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. "[A] federal habeas court may grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." Williams, 529 US at 365.

### III. Discussion

#### A. Pro Se Litigants' Pleadings

Petitioner is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under

this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). This rule requires the Court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. It does not mean that the Court is authorized to become *pro se* litigant's advocate. Despite the liberal construction afforded *pro se* pleadings, the court will not construct arguments or theories for the petitioner in the absence of any discussion of those issues. The requirement of liberal construction also does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990). District courts are not required "to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), (adding that "[d]istrict judges are not mind readers.").

Moreover, *pro se* petitioners are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se*. *Pro se* litigants must follow rules of procedure, including local rules. Further, habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted).

## B. Exhaustion of State Court Remedies

Section 2254 of Title 28 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State. . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1)(A), (c). Therefore, a petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies.  See 28 U.S.C. §2254(b).  Absent a valid excuse, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  Castille v. Peoples, 489 U.S. 346, 349, *reh'g denied,* 490 U.S. 1076 (1989).  To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court.  Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997).  "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim.  The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Id. at 911.  "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Baldwin v. Reese, 541 U.S. 27, 32 (2004); see also Howell v. Mississippi, 543 U.S. 440, 444 (2005).

The petitioner bears the burden of proving exhaustion.  See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).  "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition."  Id.  Where a petitioner has failed to exhaust his state

court remedies, the federal petition should be dismissed.  McDaniel v. Holland, 631 F. Supp. 1544, 1545 (S.D. W.Va. 1986) (citing Preiser v. Rodriguez, 411 U.S. 475, 477 (1973).

"The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard, 134 F.3d at 619. A federal court may only consider those issues the petitioner presented to the state court.  Picard v. Connor, 404 U.S. 270 (1971).  The "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims – *in federal terms* – to the highest state court prior to presenting them for federal habeas review.  Id. at 275. This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Id.  To exhaust a claim in state court, the petitioner must "expressly raise that same federal constitutional claim in state court that he raises in federal court." Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C. Aug. 1, 2006).  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar  state-claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling in the WVSCA.  Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W.Va. 1995); McDaniel, 631 F. Supp. at 1545.  A federal court may only consider those issues the petitioner presented to state court,[18] and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the

---

[18] Picard v. Connor, 404 U.S. 270 (1971).

meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. §2254(c).

A prisoner may also exhaust the State court remedies by filing a petition for a writ of habeas corpus under the original jurisdiction of the WVSCA.  However, an original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the prisoner's State court remedies.  See Moore, 879 F. Supp. at 593; McDaniel, 631 F. Supp. at 1546; see also Meadows v. Legursky, 904 F.2d 903, 908-909 (4th Cir. 1990) (*abrogated on other grounds*); Trest v. Cain, 522 U.S. 87 (1997)).

Here, Petitioner has filed a direct appeal, a state petition for writ of habeas corpus, and has appealed the denial of the same. Respondent, without actually using the term, essentially contends Petitioner has filed a mixed petition by failing to exhaust his Ground One claims of ineffective assistance of counsel.   In response, Patterson appears to concede this, admitting that he "did not know about all these time line[s]" and asking the Court "resent the time lines" to permit him time to "refile the habeas in the Clay County Circuit Court." ECF No. 37.

The Court construes Petitioner's motion to reset time lines as a motion to stay the case to permit Petitioner to return to state court to finish exhausting his claims.  It is apparent from the record that Respondent does not oppose Patterson's construed motion to stay the case.  See ECF No. 33 at 9 – 10.

After a thorough review of the record, the undersigned finds that Petitioner has filed a mixed petition, although arriving at that conclusion via a different analysis than that provided by Respondent.  As an initial point, however, the undersigned first notes that inexplicably, despite his having done so at the state court and on appeal, nowhere in Patterson's instant petition does Patterson explicitly raise *any* federal component or argue any federal constitutional violations with

regards to his three claims. His § 2254 petition includes no real memorandum in support;[19] and merely states generally that his "constitutional rights" have been violated, without identifying which rights those were, let alone what specifically violated them. Because Petitioner filed his "Statements, Statute, and Supporting Facts" on the same day Respondent's dispositive motion was docketed, an Order to Clarify Claims was sent instead of a <u>Roseboro</u> Notice; Petitioner's only response to that Order was to request that the case be stayed. He did not avail himself of the opportunity offered to file an amended petition. <u>See</u> ECF No. 34 at 2.

Therefore, after a careful review of Petitioner's direct appeal, state petition for writ of habeas corpus, his appeal of the same, the instant petition, and Petitioner's "Statements, Statute, and Supporting Facts," filed on March 20, 2020[20] the undersigned has determined that it is not merely Petitioner's Ground One claims of ineffective assistance of counsel that are unexhausted. More specifically, the undersigned makes the following findings with regard to each of Petitioner's individual claims:

- **<u>Ground One of Petition</u>**: "Ineffective assistance of trial counsel, Direct Appeal, Habeas corpus, Habeas corpus appeal, and Rule 35(b) had no counsel court dismiss action not timely file whitch ever counsel was supposed to file [ECF No. 5 at 6]" (all grammatical and spelling errors in original).

    Petitioner contends that he raised these claims on direct appeal. ECF No. 5 at 7. However, it is apparent from the record that on direct appeal, Petitioner raised a claim of ineffectiveness of *trial counsel* only, for trial counsel's failure to call any witnesses other than Petitioner, for introducing no evidence on Petitioner's behalf, and for raising very few critical objections. ECF No. 32-11 at 9. While Petitioner did raise twelve separate allegations of IAC of trial counsel in his state habeas petition [ECF No. 32-15 at 4 – 6], on appeal of the same, none of them were included. Thus, none of the IAC claims against trial counsel raised in his state habeas petition are exhausted. Moreover, here, Petitioner's claim

---

[19] Petitioner provides a brief argument about photos illegally obtained from his cellphone, and directs the reader to "the next three pages" which he contends are "statement and supporting facts of violations in petition and habeas corpus with in the Northern District Honorable Courts."  ECF No. 5-1. However, "the next three pages" are a one-page list of citations to cases and constitutional amendments, and a copy of the Order denying his Rule 35(b) motion for sentence reduction.

[20] The claims in Petitioner's Statements, Statute, and Supporting Facts were filed within the one-year period of limitation, so they are not time-barred.

of IAC of trial counsel is woefully insufficiently pled, such that it is merely a label doing service for a claim - - a title without any supporting argument; it does *not even begin* to explain in what way trial counsel was ineffective. Thus, there is no way to determine whether Petitioner intended this claim of IAC of trial counsel to be one on the ones already raised in his state habeas petition. Nonetheless, the same is moot, because none of those IAC of trial counsel claims raised in his habeas petition were ever exhausted on appeal; therefore, any such claim here is unexhausted as well, because Petitioner still has a remedy for them in state court.

Petitioner obviously did not raise any claims of IAC against appellate counsel on direct appeal. He did raise three claims of IAC against appellate counsel in his state habeas petition [ECF No. 32-15 at 6]; however, on appeal of the same, again, none of the same were included. Moreover, his IAC claims against appellate counsel here are also so insufficiently pled that they are nothing more than labels without supporting argument, because Petitioner does not even begin to explain in what way appellate counsel was ineffective. Thus, there is no way to determine whether Petitioner intended this instant claim of IAC of appellate counsel to be one which was already raised in his state habeas petition or another altogether. Nonetheless, again, because none of the IAC of appellate counsel raised in his habeas petition were ever exhausted by being raised on appeal, the point is moot; any such claim here is unexhausted as well, because Petitioner still has a remedy for them in state court.

It is apparent from even a cursory review of the record that Petitioner has never before raised any IAC claims against state habeas counsel, and certainly none against habeas appellate counsel. Thus, these claims, which are likewise so insufficiently pled that they are merely labels without any supporting argument, are also not exhausted, because Petitioner still has a remedy for them in state court.

Finally, even if any of Petitioner's instant claims of IAC of trial, appellate, habeas or habeas appellate counsel had been exhausted, as they are raised here, they state no federal basis.

- **Ground Two of Petition:** "unconstrition search and seizure, fruit of forbidding tree, fruit of a posionous tree, Due processed, Equal protection, Syllabus point, Equal Right Act, Ambiguous penal statutes, test of harmless error, Double Jeopardy, Criminal Rule Preceeded, Courtroom Preceeded, and Prejudice [ECF No. 5 at 9]" (all grammatical and spelling errors in original).

Petitioner admits that he did not raise any of these grounds on direct appeal; however, he avers that they were raised in his state habeas and in the appeal of the same. Id. at 9.

A careful review of Petitioner's state habeas petition confirms that he did raise, as Ground 3, a claim of unconstitutional search and seizure of photos from his cell phone that were used to obtain an illegal conviction (encompassing his fruit of "forbidden/poisonous" tree argument), in violation of his Due Process and Equal Protection rights under the West

Virginia Constitution and his Fourth and Fourteenth Amendment rights. The claim was also raised on the appeal of his state habeas as Ground 1. Nonetheless, here, Petitioner's claims are not the *same claims* he exhausted, given that they include no allegation of any violation of his *federal* constitutional rights. Therefore, because there is no federal basis to the claim, it is not the *same* claim that he exhausted in the appeal of his state habeas. Thus, this portion of Ground Two is not exhausted, because Petitioner still has a remedy for it in state court.

Petitioner's sub-part claim of "Syllabus point" is so insufficiently pled its meaning cannot be discerned; it is merely a label without any explanation or supporting argument, and it states no violation of any federal constitutional right. Moreover, a review of Petitioner's state habeas petition and its appeal finds no mention of the same. Thus, because it appears to never have been raised before in any state court, this sub-part of Petitioner's Ground Two claim is not exhausted, because he still has a remedy for it in state court.

Petitioner's state habeas petition contained no claim regarding the "Equal Right Act," nor did his appeal of the same. Therefore, this sub-part of Petitioner's claim is not only so insufficiently-pled its meaning cannot be discerned, it has never been raised before in any state court. Thus, it is not exhausted, because Petitioner still has a remedy for it in state court.

A review of Petitioner's state habeas petition reveals no specific claim even remotely similar to Petitioner's claim of "test of harmless error," thus, this claim is not exhausted, because Petitioner still has a remedy for it in state court, should he choose to pursue it.

A review of Petitioner's state habeas petition confirms that he did raise a claim of Double Jeopardy over the language in Count Two of the Indictment, alleging that because the Indictment made it appear to be a second charge for a second event, when only one event was charged, it violated his Due Process rights and rights to be free from double jeopardy under both the West Virginia Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. The claim was also raised as Ground Two in the appeal of his state habeas petition. However, here, Petitioner has not raised the *same* claim that he exhausted in state court, given that he omitted to include the allegation of violation of his *federal* constitutional rights. Therefore, this portion of Ground Two, as presently worded in the petition, is not exhausted; however, Petitioner can re-raise this claim with its appropriate federal basis, after he finishes exhausting the rest of claims.

Petitioner's sub-part claim of "ambiguous penal statutes" is so insufficiently-pled it is difficult to discern Petitioner's intent. In Petitioner's state habeas, he did raise challenges to various legal definitions of the charges and instructions to the jury on the same, in Grounds 9, 10, 11, 12, 13, 14, 15; however, not only can it not be discerned from the record which one of these Petitioner is attempting to challenge, on Petitioner's appeal of his state habeas, none of these grounds were raised, thus, any claim regarding "ambiguous penal statutes" is not exhausted, because Petitioner still has a remedy for it in state court.

As for Petitioner's sub-part "claims" of "Criminal Rule Preceeded, Courtroom Preceeded, and Prejudice," these claims are so insufficiently pled they are difficult to discern.  Further, nowhere in the record of Petitioner's state habeas petition or its appeal is there any mention of the same. Thus, these sub-portions of Petitioner's Ground Two claim are not exhausted, because Petitioner still has a remedy for them in state court, should he choose to pursue the same.

- **Ground Three of Petition:** "Judge violated Double Joepardy in sentencing on Dec. 15, 2014 when he stated zero day served on end of sentencing order. And when the [] Judge stated that the defendant faile to take respondable for his Action show projudical to case [ECF No. 5 at 11]" (all grammatical and spelling errors in original).

Petitioner avers that he raised this claim on direct appeal; a review of Petitioner's brief on direct appeal does not support this.

Petitioner also contends that he raised this claim in his Rule 35(b) sentencing motion in circuit court, where it was dismissed as untimely.  While the record confirms this, it also reveals that in that Rule 35(b) motion, Petitioner cited only to violations of his Double Jeopardy and Due Process rights under the *West Virginia* Constitution and did not contain any federal basis for his claim.  Although his instant federal petition also makes no mention of the requisite violations of Petitioner's Double Jeopardy and Due Process rights under the United States Constitution, even if the undersigned were to liberally construe Petitioner's inartful pleading to include the same, because Petitioner never appealed the denial of the Rule 35(b) sentencing motion to the highest state court, this claim is unexhausted as well, because Petitioner still has a remedy for it in state court.

- **Ground One of Statements, Statute, and Supporting Facts:** The test for harmless error, (a) inadmissible evidence must be remove to see if there enough evidence to still convict. First: an arrest cannot be justified what its reproduces, nor can a illegal search be justified what it produces. Without illegal obtain evidence and content thereof, the charges the petitioner's now stand convicted are without merits. The statements, Interviews, Investigations, reports, recordings, testimonies, and records are all base on illegal obtain evidence, and base on hate crime; the Government allow these violations to stand[.] ECF No. 31 at 2 – 3 (all spelling and grammatical errors in original).

Here, liberally construed, it would appear that Petitioner is attempting to argue that the test for harmless error is proven if once inadmissible evidence used to gain a conviction is removed, sufficient evidence still remains to obtain a conviction, but that in his case, there was not, and therefore (relying on the "supporting" citations he provided below the claim), a violation of West Virginia Constitution Article III §§ Six and Ten and the Fourth and Fourteenth Amendments of the United States Constitution occurred.

Petitioner provides no information in his "Statements, Statute, and Supporting Facts" to indicate whether he ever exhausted this claim by raising it to the highest state court. A careful review of the record does not show that this "claim" was ever raised as a

stand-alone claim, but Petitioner's inclusion of the "hate crime" as supporting argument definitely rules it out as being a claim that was ever raised before in any state court. Thus, this claim is not exhausted, either, because Petitioner still has a remedy for it in state court.

- **Ground Two of Statements, Statute, and Supporting Facts:** Charges violated the Constitutions, both the United States and West Virginia on Equal Protection, Projudical, Due Process, Double Joepardy, and Legislater or Congress was inflences by Bill of Authority, Authoritorion Charges, Inflences of Magion Law Bills, Laws maker, Rules Makers and charges provided; violated their Own Oath of Office when they violated the Constitutional Rights provided. ECF No. 31 at 3 – 4 (all spelling and grammatical errors in the original).

*Very* liberally construed, it appears that here, Petitioner is attempting to allege that the charges against him violated his rights to Equal Protection, Due Process, and to be free of Double Jeopardy as guaranteed by Article III, §§ 6, 10, and 11 of the West Virginia Constitution and the Fourth, Fourteenth Amendments, and liberally construed, Fifth Amendments to the United States Constitution.

Petitioner provides no information in his "Statements, Statute, and Supporting Facts" to indicate whether he ever exhausted this claim by raising it to the highest state court. A careful review of the record indicates nothing even approximating this claim or its sub-parts were ever raised on direct appeal.

Because there are so many "sub-parts" to this "claim," it will be broken down and each decided separately.

Petitioner has already been determined to have raised and exhausted claims of violations of his Fourth Amendment rights to be free from illegal searches and seizures, his Fifth Amendment rights to be free from double jeopardy, his Fourteenth Amendment right to due process, in his state habeas petition (as Grounds 3 and 4); both of those claims were then exhausted on appeal of his state habeas (as Grounds 1 and 2).

Nonetheless, the Fourth Amendment right to be free from illegal searches and seizures "claim" he raises in his § 2254 petition is worded such that it is little more than a label without supporting argument; the only enlightenment as to its substance is found in the argument Petitioner provided in his partial memorandum in support, to the effect that "there has been no evidence presented that the photographs were ever shown to the grand jury" and that the "circuit court found that the evidence obtained from petitioner'[s] cell phone was not presented as evidence in the trial. As there is no indication that the photographs obtained from petitioner's cell phone were ever considered in evidence against him." See ECF No. 5-1 at 11. However, this is not the *same* argument raised in his state habeas; it is actually the reverse; in his state habeas, the argument was that Petitioner's Fourth Amendment rights against illegal search and seizure were violated by the taking of his cell phone and use of the pictures without a valid search warrant, and thereafter used as evidence to obtain an illegal indictment, constituting plain error [ECF No. 32-15 at 6 – 7]; in the appeal of the state habeas, the argument was that "the illegal seizure of images from

the cell phone . . . was presented to the Grand Jury, which resulted in an indictment, which procedurally flowed to the trial in which the Petitioner was convicted[.]" ECF No. 31-19 at 5.

Likewise, the argument regarding the violation of Petitioner's Fifth Amendment right to be free from double jeopardy in his state habeas was that "Petitioner was convicted of two charges stemming from the same event which subjected the Petitioner to multiple punishments for the same offense and violated the double jeopardy clause of the Fifth Amendment[.]" ECF No. 32-19 at 5. Here, "Petitioner's Statements, Statute, and Supporting Facts" provides no argument at all in support of his claim of double jeopardy; he only states that the charges violated double jeopardy, not why or how. Thus, even though Petitioner has exhausted a very similar claim on appeal of his state habeas, it cannot be definitively determined from the record before the undersigned whether the claim he now raises in his "Statements, Statute, and Supporting Facts" is the *same* claim. This claim may very well be exhausted, should Petitioner choose to re-raise it and flesh it out using the same arguments he previously used when he exhausted his double jeopardy claim in the state courts.

Petitioner's claim regarding West Virginia Constitution Article VI § 16: "Oath of Office" any state worker taking any government office or seat has to sware [sic] a Oath to uphold the Constitutional laws, or give up their seat or office; If they violated them" in addition to being unintelligible, does not state any federal basis, nor does it appear to ever have been raised before on direct appeal or in his state habeas or its appeal. Thus, this sub-portion of this claim is not exhausted, because Petitioner still has a remedy for it in state court, should he choose to pursue it.

Finally, Petitioner's unintelligible claims regarding "Legislater or Congress was inflences by Bill of Authority, Authoritorion Charges, Inflences of Magion Law Bills, Laws maker, Rules Makers and charges provided" are so insufficiently pled they are impossible to discern; moreover, they do not appear to have ever been raised before in any state court. Thus, these subparts are not exhausted, because Petitioner still has a remedy for them in state court, should he choose to pursue them there.

- **Ground Three of Statements, Statute, and Supporting Facts:** Fruit of the Poisonous tree[.] Where a confession is induce by illegally seized evidence, the confession is subject to exclusion of Fruit of the Poisonous tree. But if you have a sex charge this is violated, because of Influence of Hate Crimes. Moreover, according to this any testimonies, statements, interviews and records. All of these are fruit of the Poisonous tree and is subject to exclusion . . . But because the petitioner has been Charge and Convicted with a Hate Crime; this do not apply to his charges, this is in violation of Due process, Equal protection, and Projudical. ECF No. 31 at 4 – 5 (all spelling and grammatical errors in original).

Liberally construed, it appears that Petitioner is attempting to allege that his confession was induced by illegal evidence, in violation his due process rights under the WV Constitution and the Fourth & Fourteenth Amendments to the US Constitution, then

any testimony flowing from it should also be inadmissible as "fruit of the poisonous tree." Petitioner's claim regarding "hate crimes" is unclear.

Petitioner provides no information in his "Statements, Statute, and Supporting Facts" to indicate whether he ever exhausted this claim by raising it to the highest state court. However, even a cursory review of the state court records reveals that Petitioner has never before raised any type of claim regarding "hate crimes." Moreover, even affording Petitioner the benefit of liberal construction, Petitioner's claims regarding "hate crimes" and "authoritarian government" are unintelligible, insufficiently pled, and do not appear to have ever been raised before in any state court. Thus, these subparts are not exhausted, because Petitioner still has a remedy for them in state court.

- **Ground Four of Statements, Statute, and Supporting Facts:** Arrest to Shame for further investigation: The use of the arrest power to sham and provide paper trial and Illegal evidence for further investigations. ECF No. 31 at 5 (all spelling and grammatical errors in original).

  Here, liberally construed, it appears Petitioner is attempting to allege that his arrest was unlawful, was done to shame him and to provide a paper trail and illegal evidence for further investigation.

  Petitioner provides no information in his "Statements, Statute, and Supporting Facts" to indicate whether he ever exhausted this claim by raising it to the highest state court. Further, a careful review of the record indicates this claim has never been raised before in any state court. Moreover, Petitioner states no federal basis for this claim, only factual allegations. Thus, it is not exhausted, because Petitioner still has a remedy for it in state court.

- **Ground Five of Statements, Statute, and Supporting Facts:** The General rule is that where there is an illegal search and seizured of property, such property cannot be interduce into evidence at trial and testimonies may not be given in regurd to surrounding of such property. The Exception to this rulling is if you have a HATE CRIMES this does not apply to defendant cases. ECF No. 31 at 5 – 6 (all spelling and grammatical errors in original).

  Liberally construed, it appears that Petitioner is again attempting to allege that evidence obtained via illegal search and seizure cannot be introduced at trial nor any testimony be given about it, a claim *related to* the Ground 3 claim raised in his state habeas and exhausted as Ground 1 of his state habeas appeal.

  Petitioner provides no information in his "Statements, Statute, and Supporting Facts" to indicate whether he ever exhausted this claim by raising it to the highest state court. Although careful review of the record indicates that Petitioner did raise a *similar* claim as Ground 3 of his state habeas, and then exhausted that by raising it as Ground 1 of his state habeas appeal, the claim as it is raised here does not appear to be the *same* claim, because Petitioner's supporting argument now references "hate crimes," argument which was never raised in his state habeas or its appeal.

32

Had this iteration of this claim been the same claim that was exhausted in Petitioner's state habeas and its appeal, even though Petitioner failed to explicitly state a federal basis, nonetheless, if it were *very* liberally construed, a federal basis could have be gleaned, given Petitioner's inartful attempt to cite <u>Silverthorne Lumber Co., Inc. v. United States</u>, 251 U.S. 385 (1920). Nonetheless, because it is not the same claim that was exhausted to the highest state court, this sub-part of the claim is not exhausted, and Petitioner still has a remedy for it in state court.

- <u>**Ground Six of Statements, Statute, and Supporting Facts**</u>: "Equal Right Act breathes life into the first, third, tenth, Eleventh, Seventeenth, and twenties of the W.Va. Const. Art. III, § [sic]." ECF No. 31 at 6 (all spelling and grammatical errors in original).

Petitioner provides no information in his "Statements, Statute, and Supporting Facts" to indicate whether he ever exhausted this claim by raising it to the highest state court. Although Petitioner mentions Equal Right Act" as a sub-part to his Ground 2 claim in his petition, it is as equally insufficiently pled and unintelligible as it is here. Further, this claim states no federal basis. Finally, because the record does not reveal that anything approximating it has ever been previously raised in any state court proceeding, it is not it is not exhausted, because Petitioner still has a remedy for it in state court.

Accordingly, although many of the claims raised in the instant petition are somewhat similar to claims raised below, as noted *supra*, under <u>Anderson v. Harless</u>, *supra* at 6, that is insufficient. "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." <u>Breard v. Pruett</u>, *supra* at 619. Therefore, it cannot be said that Petitioner has fully exhausted his state court remedies as to any claim except for his Ground Two claim in the petition regarding Double Jeopardy, which he neglected to raise here with the federal basis with which it was exhausted, and the sub-part of his Ground Two "Statements, Statute, and Supporting Facts" claim, construed here as a timely-filed supplement to his petition, regarding his claim of Double Jeopardy, given that it was so insufficiently pled there is no way to definitively determine whether Petitioner was relying on the same arguments raised and exhausted in his state habeas and its appeal.[21] <u>See</u> <u>Moore</u>, 879 F. Supp.

---

[21] These are likely the same claim.

at 593; <u>McDaniel</u>, 631 F. Supp. at 1546; <u>see</u> <u>also</u> <u>Meadows v. Legursky</u>, 904 F.2d 903, 908 - 09 (4th Cir. 1990) (abrogated on other grounds, <u>Trest v. Cain</u>, 522 U.S. 87 (1997)).

In <u>Rose v. Lundy</u>, 455 U.S. (1982), the Court held that a federal district court may not adjudicate mixed petitions and imposed a requirement of total exhaustion, implemented by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to litigate the unexhausted claims. At the time the Court issued this decision, AEDPA[22] had not been enacted, and there was no statute of limitations on federal habeas corpus petitions. Therefore, dismissal without prejudice did not preclude petitioners from returning to federal court once their claims were exhausted in state court proceedings.

However, "[a]s the result of the interplay between AEDPA's 1-year statute of limitations and <u>Lundy</u>'s dismissal requirement, petitioners who come to federal court with "mixed" petitions, run the risk of forever losing their opportunity for any federal  review of their unexhausted claims. <u>Rhines v. Weber</u>, 544 U.S. 269 (2005). Accordingly, the Supreme Court has held that a federal district court may, under some circumstances stay, rather than dismiss without prejudice, a federal habeas petition containing both exhausted and unexhausted claims in order to allow the petitioner to present the unexhausted claims to the state court.

Having concluded that Petitioner has presented at least one exhausted claim along with his numerous unexhausted claims, now, because of the length of time this matter has been pending, it is apparent that Petitioner would be time-barred if the petition were dismissed pursuant to <u>Lundy</u>. Therefore, the undersigned must turn to consideration of whether stay and abeyance is appropriate, and whether the same is appropriate in this case.

---

[22] In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. § 2255.

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2244(d). The limitation period shall run from the latest of:

> A) the date on which the judgment of conviction becomes final by the conclusion of direct review of the expiration of the time for seeking such review;

> B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute of limitations in AEDPA, under § 2244(d)(2), provides that the one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "[U]nder § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of *certiorari*, or expiration of the period of time to seek further appellate review), is tolled from the limitations period for federal habeas corpus petitioners . . ." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999).

In the instant case, Patterson was convicted on July 23, 2014 and sentenced on December 15, 2014. The WVSCA affirmed the circuit court's decision on April 8, 2016. Mandate issued on May 9, 2016. Although Patterson did not petition for a writ of *certiorari,*[23] as noted *supra*, he had

---

[23] Patterson's answer to question 9(g) on the Court-approved form § 2254 petition avers that he did file a petition for writ of *certiorari* in the United States Supreme Court after his direct appeal was denied, but that the case number for

until August 8, 2016 to do so.[24] He filed his state habeas corpus petition on May 13, 2016. It was

denied on March 14, 2017. Patterson filed his Notice of Appeal of the denial of habeas relief on

April 7, 2017. On November 21, 2018, the WVSCA affirmed; mandate issued on December 27,

2018.[25]

Patterson filed a W.Va. Crim. Pro. R. 35(b) Motion for Sentence Reduction on February

20, 2019; it was denied a week later, on February 27, 2019. On July 10, 2019, Patterson filed the

instant federal petition.

Therefore, Patterson's judgment would have become final on August 9, 2016, when the

time within which to file a petition for writ of *certiorari* expired. However, he had already filed

his state habeas petition in Clay County Circuit Court before that date, on May 13, 2016, tolling

the one-year period of limitations before any time had elapsed from it. See 28 U.S.C. § 2244(d)(2)

---

that petition was "VOID." ECF No. 5 at 3. He further indicated that the result of that petition was that the "U.S. District Court of the District of Columbia told me to file here first." Id.  However, a review of the docket of Petitioner's direct appeal in the WVSCA does not reflect that any petition for writ of *certiorari* was ever filed. See Exh. 1, WVSCA Docket on Direct Appeal. It appears that Petitioner misunderstood question 9(g).

[24] Pursuant to Rules 13.1 and 13.3 of the United States Supreme Court Rules, a request for further review of the Petitioner's conviction by petition for *certiorari* could have been filed within the 90-day period following the denial of his direct appeal.

[25] Petitioner's Clay County Circuit Court habeas docket also reflects the filing of a "Petitioner's Brief" addressed to the Clay County Circuit Court on June 11, 2019. See ECF No. 32-14. The *pro se* law clerk ("PSLC") assigned to this case obtained a copy of this "brief" from the Clay County Circuit Court; it appears to be a one-page, handwritten, allegation that the circuit court, along with "the help of other states workers repeatedly violated" Petitioner's rights, thus, Petitioner requested a new trial or dismissal of charges. Petitioner states "[i]f petitioner would have had council [sic] who wanted to defend him, he would not have to file within the Honorable court in Washington DC . . this is your notice of filling [sic] with in [sic] the Honorable court."  The "brief" vaguely alludes to the fruit of a poisonous tree, provides several sentences of argument and cites to some law. It includes a one-page affidavit, a two-page table of contents, and three pages titled "Attention," directed to the United States Courthouse, Room 1225" in Washington D.C., alleging that the state violated his rights, that without the violation, there would "not be merits for charges against petitioner[,]" that he was seeking "reversal of criminal conviction; charges dismiss with perjudical [sic]," and a request that the document be considered a "formal motion." It references to having to file a motion to obtain records from the Clay County Circuit Court. See "Petitioner's Brief, attached as Exh. 3. According to the attached certification of mailing, Petitioner apparently sent a copy of it not only to the Clay County Courthouse, but also to the WVSCA, and the "United States Courthouse Room 1225" in Washington D.C.  Upon inquiry to the WVSCA Clerk of Court, the PSLC assigned to this case was advised that because the "brief" was styled as a pleading for the Clay County Circuit Court, the WVSCA did not use it to open a case or docket it in Petitioner's habeas appeal, and Petitioner's habeas appellate docket reflects this. See WVSCA Docket Habeas Appeal, attached as Exh. 2.

[providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."]; Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). The limitations period remained tolled throughout the pendency of the state habeas petition, which was dismissed on March 14, 2017. Petitioner's timely appeal of the same kept the one-year period of limitations tolled. The WVSCA issued its decision on Patterson's habeas appeal on November 21, 2018; mandate issued on December 26, 2018, concluding state review.[26] Although Patterson had the right to petition the United States Supreme Court for a writ of *certiorari*, he did not do so. Unlike with direct review, however, the limitation period does not remain tolled during the 90-day writ of *certiorari* filing period following denial of state post-conviction relief. Harris, 209 F.3d at 328; Washington v. Beck, 2005 WL 1869229, at *1 (M.D. N.C. Aug. 3, 2005) (citing Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999)). By extension, this means that unlike with a direct appeal, the statute of limitations is not tolled during the time in which a habeas petitioner could seek a petition for *certiorari*. Therefore, again adding a day pursuant to Fed.R.Civ.P Rule 6(a), see also Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000), the one-year clock started running again on December 27, 2018.

However, on February 20, 2019, after 55 days had run, Patterson filed his Rule 35(b) motion for sentence reduction, tolling the clock again.[27] The Motion for sentence reduction was

---

[26] "State review ends when the state courts have finally resolved an application for state postconviction relief. After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open." Lawrence v. Florida, 549 U.S. 327, 332 (2007).

[27] Other post-conviction challenges to a sentence (besides habeas) will also toll the 2254 SOL. Wall v. Kholi, 131 S.Ct. 1278. In that decision, the Court ruled that the one-year ADEPA clock stops running while a motion for sentence reduction is pending.  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. §2244(d)(2); Harris v. Hutchinson, 209 F.3d at 327.

denied on February 27, 2019; although Petitioner did not appeal the ruling, he had 120 days, or until June 27, 2019, to do so.[28] Adding one day pursuant to Fed.R.Civ.P. 6(a), the clock began to run again on June 28, 2019.

On July 10, 2019, after 12 more days had run, Petitioner filed the instant federal petition. Because the time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see Duncan v. Walker, 533 U.S. 167 (2001), after adding a day pursuant to Fed.R.Civ.P. 6(a), the one-year clock began running again on the remaining 298 days of his one-year period of limitation on July 11, 2019, and continued to run until it expired on Monday, May 4, 2020.

As established by the United States Supreme Court, stay and abeyance is only appropriate in limited circumstances in which the district court determines that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Rhine v. Weber, 544 U.S. 269, 277-78 (2005). In Rhines, the Supreme Court provided little guidance as to what constitutes good cause in the context of stay and abeyance. See Rhines, 544 U.S. at 279 (Stevens, J., concurring) ("[G]ood cause for failing to exhaust state remedies more promptly . . . is not intended to impose the sort of strict and inflexible requirement that would trap the unwary *pro se* prisoner.") (internal markings and citation omitted). In addition, the lower courts differ on how stringently to define good cause in the context of stay and abeyance. See Provencio v. Chrones, No. 06-1670, 2007 WL 1299967, at *2-*6 (S.D. Cal. Apr. 30, 2007) (collecting cases containing various definitions for good cause standard); Williams v. Hurley, No. 2:05-cv-985, 2006 WL 1650771, at 10 (S.D. Ohio June 6, 2006) (report and recommendation discussing various

---

[28] See Lawrence, *supra*, 549 U.S. at 332.

definitions applied and noting that some courts have adopted standard for cause applicable to procedural default while other courts have declined to do so); *compare* Landeck v. Allen, No. 3:14cv-88, 2014 WL 5410630, at *4 (E.D. Va. Oct. 22, 2014) (recognizing that standard should not be "inordinately demanding") *with* Wooten v. Kirkland, 540 F3d 1019, 1024 (9th Cir. 2008) (declining to adopt "broad interpretation" of good cause because such interpretation would undermine goals of ADEPA).

Consequently, federal courts have also disagreed as to what constitutes good cause in the stay analysis. *Compare* Long v. Ballard, No. 2:13cv26, 2013 WL 6858415, at 6 (N.D. W.Va. Dec. 30, 2013) (finding that good cause did not exist to grant stay where petitioner argued that any subsequent federal habeas petition would be time barred), *with* Smith v. Wolfe, No. PJM-10-2007, 2011 WL 4548315, at 6 (D. Md. Sept. 27, 2011) (granting stay rather than dismissing without prejudice where any subsequent federal habeas petition would be time barred), *and* Murray v. Perry, No. 3:06-cv-51, 2007 WL 601494, at 5 (N.D. W.Va. Feb. 22, 2007) (magistrate judge recommending stay where any subsequent federal habeas petition would be time barred) (subsequently dismissed as moot due to Murray's death), *and* Clement v. Blair, No. 06-00351, 2007 WL 57782, at 3 (D. Haw. Jan. 5, 2007) (recognizing that "impending expiration of [AEDPA's] statute of limitations does constitute good cause."); *compare* Newman v. Lempke, No. 13-cv-531, 2014 WL 4923584, at 3 (W.D.N.Y. Sept. 30, 2014) (recognizing ignorance or confusion about law may constitute good cause), and Provencio, 2017 WL 1299967, at 5 (report and recommendation finding that ignorance of law and reasonable confusions as to whether state habeas petition would be timely satisfied good cause standard), and Riner v. Crawford, 415 F.Supp.2d 1207, 1211 (D. Nev. 2006) (holding that good cause exists where petitioner can "show that he was prevented from raising the claim, either by his own ignorance or confusion about the

law or the status of his case, or by circumstances over which he had little or no control"), *with* Jackson v. Baenen, No. 12-cv-00554, 2012 WL 5988414, at 2 (E.D. Wis. Nov. 29, 2012) (holding ignorance of law does not constitute good cause), *and* McIntyre v. Quarterman, No. 3-09-cv-0574, 2009 WL 1563516, at 3 (N.D. Tex. June 2, 2009) (same); compare Blake v. Baker, 745 F.3d 977 (9th Cir. 2014) (holding ineffective assistance of counsel during state habeas proceedings may constitute good cause for stay), *and* Rhines v. Weber, 408 F.Supp.2d 844, 849 (D.S.D. 2005) (same), *with* Edwards v. Thaler, No. 3:10-cv-0006-M, 2011 WL 4056299, at 2 (N.D. Tex. Aug. 15, 2011) (finding that ineffective assistance of state habeas counsel did not support finding of good cause for stay), report and recommendation adopted by 2011 WL 4074330 (N.D. Tex. Sept. 12, 2011), *and* Carter v. Friel, 415 F.Supp.2d 1314, 1317-18 (D. Utah 2006) (recognizing split of authority as to whether ineffective assistance of post-conviction counsel constitutes good cause and concluding that it does not).

Here, it seems apparent from the record that the Petitioner believed he had exhausted his claims in the state courts. Moreover, as an obviously very unsophisticated *pro se* litigant, to whom latitude should be given, his motion to reset the timelines still does not appear to appreciate the fact that most of his claims are not the same claims he raised on appeal of his habeas to the WVSCA. The undersigned finds that any confusion on the Petitioner's part as to whether some of his claims had been properly exhausted is an appropriate factor to consider in determining whether he acted reasonably in filing for habeas relief prematurely with this Court. Consequently, in light of the certainty that Petitioner's ability to obtain federal habeas relief will be denied if his petition is dismissed, the undersigned finds that good cause exists for his failure to exhaust his state court remedies before proceeding to this Court.

As for the second consideration in assessing the propriety of a stay, the Respondent's response was not a thorough analysis of all of Petitioner's claims, and the undersigned cannot conclude that Petitioner's claims are plainly meritless. Having reviewed the § 2254 petition, many of the unexhausted claims relate to critical aspects of his conviction, including ineffective assistance of counsel.

Finally, with regard to the third element set forth in <u>Rhines</u>, there is no indication that the Petitioner has engaged in "intentionally dilatory litigation tactics." <u>Rhines</u>, 544 U.S. at 278. In fact, it appears quite the opposite. Petitioner appears to have been diligent in seeking relief from his convictions. He timely filed an appeal, and subsequently, filed a *pro se* habeas petition before counsel was appointed to represent him. Furthermore, there is no indication that he failed to cooperate with counsel or prevented any of his habeas counsel from pursuing all claims which he believed were proper. Finally, within approximately four days of the WVSCA's mandate issuing on the denial of his habeas appeal, he sought federal habeas relief in this Court.

As previously established, the Petitioner filed this case on July 10, 2019. Because the time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see <u>Duncan v. Walker</u>, 533 U.S. 167 (2001), here, because 67 days elapsed before this petition was filed, and it has been pending for over a year and a half, the one-year federal time limit has already expired; thus, a dismissal would render a subsequent habeas petition untimely.

In light of the fact that, pursuant to <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), a federal district court may not adjudicate mixed petitions and the "AEDPA's 1-year statute of limitations and <u>Lundy</u>'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions, run

the risk of forever losing their opportunity for any federal review of their unexhausted claims."

<u>Rhines v. Weber</u>, 544 U.S. 269, 275 (2005).  Consequently, that is the position Petitioner is in.

## IV. <u>Recommendation</u>

Accordingly, the undersigned **RECOMMENDS** that: Respondent's Motion to Dismiss and for Summary Judgment [ECF No. 32] be **DENIED**; Petitioner's unopposed construed motion to stay [ECF No. 37] be **GRANTED;** that the petition be construed as a mixed petition; and that the Clerk place this matter on the inactive docket of the Court pending resolution of Petitioner's claims to be raised in state court.

Further, the undersigned **RECOMMENDS** that Petitioner be **DIRECTED** to file (1) quarterly reports, regarding the status of his state habeas and appeals on the unexhausted claims he intends to pursue in his federal § 2254 petition; and (2) a Notice of Exhaustion within thirty (**30**) days from the date his state court remedies have been fully exhausted. Petitioner must move for reinstatement of this action to the active docket of the Court within thirty (**30**) days from the date his state court remedies have been exhausted**. Petitioner must be advised that failure to do so could result in dismissal of his present petition.**

Finally, the undersigned **RECOMMENDS** that Petitioner's pending second motion to appoint counsel be **DENIED** and his motion to file only one copy be **GRANTED**.

A separate Report and Recommendation will be entered, recommending that Petitioner's pending petition for "Writ of Mandamus" [ECF No. 43] be denied.

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States

District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

DATED: February 2, 2021

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE